IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02632-PAB-KMT

JERRY DEVAUL,

    Plaintiff,

v.

TK MINING SERVICES L.L.C.;
DAVID SCHAAF, an individual in his capacity as Owner of TK Mining Services, L.L.C.;
KEITH BUHRDORF, an individual in his capacity as Owner of TK Mining Services, L.L.C.;
SANDVIK MINING AND CONSTRUCTION USA, L.L.C.;
ROBERT BROWN MINING OPERATIONS, MINING INNOVATIONS PROCUREMENT AND SALES; and
PLATEAU MINING CORPORATION,

    Defendants.

# ORDER

This matter is before the Court on Plaintiff's Motion to Remand and Brief in Support [Docket No. 7] filed by plaintiff Jerry DeVaul; the Motion to Strike Declaration of Keith Scranton [Docket No. 36] filed by defendants TK Mining Services L.L.C., David Schaaf, and Keith Buhrdorf ("TK Mining"); and the Motion Requesting Oral Argument and Evidentiary Hearing on Plaintiff's Motion to Remand [Docket No. 39] filed by TK Mining.

This case arises out of an incident that occurred on October 15, 2011 in which Mr. DeVaul, while working at a mine owned by defendant TK Mining, was hit by a

scooptram[1] and lost both of his legs as a result. Mr. DeVaul filed this case on August 20, 2013 in the District Court for Las Animas County, Colorado. Docket No. 3 at 1. TK Mining removed the case to this Court on September 26, 2013. Docket No. 1. TK Mining asserts that removal is proper under 28 U.S.C. § 1442(a) because, at all relevant times, it was acting under the order of the United States Department of Labor, Mine Safety and Health Administration ("MSHA"). Docket No. 1 at 2, ¶ 3.

## I. BACKGROUND

The following factual allegations are set forth in the first amended complaint ("complaint"). At the time of the accident on October 15, 2011, TK Mining owned the scooptram. Docket No. 4 at 5, ¶ 47. On October 19 and 20, 2011, the MSHA tested the scooptram and found that it had several mechanical problems. *Id*. at 6-7, ¶ 66. After the MSHA completed its testing, TK Mining "retained ownership and control" of the scooptram. *Id*. at 7, ¶ 68.

On November 23, 2011, TK Mining was sent a letter stating that Mr. DeVaul was represented by counsel and demanding that TK Mining preserve the scooptram without modifying it as the scooptram had evidentiary value in possible upcoming litigation. Docket No. 4 at 7-8, ¶¶ 69-70. After receiving this letter, TK Mining modified the scooptram without first notifying Mr. DeVaul or permitting him to inspect the scooptram. *Id*. at 8, ¶¶ 71-72, 74. TK Mining did not keep sufficiently detailed records to document the changes it made to the scooptram following the accident. *Id*. at ¶ 73. In addition,

---

[1] A scooptram is a "trackless, low profile diesel powered vehicle used to transport earth and ore in underground mines." *Hollinger v. Wagner Mining Equip. Co.*, 667 F.2d 402, 403 n.1 (3d Cir. 1981). The model of the machine that hit Mr. DeVaul was the EIMCO 915E and its serial number was 9151077. Docket No. 4 at 5, ¶ 47.

TK Mining lost records regarding this modification when it moved its mining operations following the accident. *Id*. at ¶ 76.

Mr. DeVaul alleges that TK Mining intentionally and negligently spoliated evidence by modifying the scooptram despite the fact that it was on notice of the scooptram's relevance to Mr. DeVaul's potential legal claims. He further alleges that TK Mining's actions constitute extreme and outrageous conduct. Docket No. 4 at 20, ¶¶ 216-25. Mr. DeVaul seeks general and special damages, including medical bills and lost wages. *Id*. at 20.

## II. ANALYSIS

Plaintiff argues that there is no basis for federal jurisdiction because the complaint concerns only modifications that TK Mining undertook after the MSHA had returned the machine to TK Mining's ownership and control. Docket No. 4 at 7-8, ¶¶ 68-71; Docket No. 7 at 5; Docket No. 31. TK Mining responds that remand is unwarranted because the Notice of Removal articulates a colorable federal defense, namely, that TK Mining modified the scooptram under the order and authority of the MSHA, which preempts conflicting state law. Docket No. 16 at 4-5.

Under 28 U.S.C. § 1442(a)(1), state law claims brought against private individuals or entities are removable to federal court upon a showing that (1) the private entity was acting under the direction of a federal officer when engaging in the challenged conduct; (2) the entity has a colorable federal defense to the plaintiff's claims; and (3) there is a causal connection between the activities carried out under federal authority and the conduct underlying the state court claims. *Vandeventer v.*

*Guimond*, 494 F. Supp. 2d 1255, 1263 (D. Kan. 2007) (citing *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1149 (D. Colo. 2002)). Private actors removing cases under § 1442 "bear a special burden of establishing the official nature of their activities." *Freiberg*, 245 F. Supp. 2d at 1150. The requirement that a private party show it was acting under federal authority "typically involves subjection, guidance, or control" as well as "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151-52 (2007) (internal citations omitted) (emphasis in original). Mere compliance with a generally applicable law, rule, or regulation is not sufficient to meet this standard. *Id*.

Section 1442(a) is notable in two respects. First, the well-pleaded complaint rule does not apply; removal jurisdiction may be established on the basis of a federal defense as set forth in a notice of removal. William W. Schwarzer, A. Wallace Tashima, & James W. Wagstaffe, Prac. Guide Fed. Civ. Proc. Before Trial (Nat. Ed. 2013) Ch. 2D-4, § 2:2863. Second, a defendant may remove a case under § 1442(a) without the consent of the other defendants. *See Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998). "As long as any defendant is [able to remove the claims against it under § 1442(a)], the entire case is removable to federal court, even if the other defendants could not have removed the case." *Id*. at Ch. 2D-4, § 2:2890.

A colorable federal defense need not be a "sustainable defense"; that is, a defendant "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Rather, "the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson v. Dow Chem. Co.*,

517 F.3d 129, 139 (2d Cir. 2008). In assessing whether a party has asserted a colorable federal defense, "no determination of fact is required but it must fairly appear from the showing made that petitioner's claim is not without foundation and is made in good faith." *State of Colorado v. Symes*, 286 U.S. 510, 519 (1932).

Under the Mine Improvement and New Emergency Response Act of 2006 (the "MINER Act"), 30 U.S.C. § 801 *et seq.*, a mine operator "who fails to correct a violation for which a citation has been issued under section 814(a) . . . within the period permitted for its correction may be assessed a civil penalty of not more than $5,000 for each day during which such failure or violation continues." 30 U.S.C. § 820(b)(1). The MINER Act preempts state laws that conflict with the provisions of the statute "or with any order issued or any mandatory health or safety standard." 30 U.S.C. § 955(a).

### A. Removal Jurisdiction

In opposing plaintiff's motion to remand, TK Mining argues that removal is proper because the "only alterations TK Mining made to the scoop were compelled by order of MSHA." Docket No. 16 at 5. TK Mining recognizes that "Plaintiff asserts that his spoliation claims concern action other than conduct compelled by MSHA," but states that "his complaint appears to indicate otherwise" because the "only specific allegations of scoop alterations in Plaintiff's complaint occurred while MSHA had control over the scoop." Docket No. 16 at 6. It further states that, "[a]lthough Plaintiff claims that additional modifications were made [after the MSHA relinquished control of the scooptram], Plaintiff failed to claim what, where, when, or how the 'additional' modification(s) allegedly took place." *Id.* Based on the purported vagueness of

plaintiff's allegations, TK Mining concludes that "Plaintiff's complaint suggests that TK Mining had a duty to preserve evidence when MSHA ordered TK Mining to adjust the scoop's braking system." *Id*.

TK Mining's opposition to the motion to remand is based on the following factual assertions set forth in the Notice of Removal:

> Immediately following the incident, MSHA asserted control over TK Mining's operations pursuant to its authority under the Mine Safety and Health Act of 1977 ("Mine Act"), Sections 103(j) and 103(k). . . . MSHA maintained control over the equipment central to Plaintiff's product liability action, a self propelled heavy duty diesel scoop identified as Eimco S/N 0151077 [sic] (the "scoop"), until October 24, 2011. . . . Under this authority, MSHA ordered TK Mining to adjust the braking system to the scoop. . . . TK Mining complied with this order and adjusted the braking system to the scoop. . . . Therefore, TK Mining was "acting under" MSHA and its officers in their official capacity when it adjusted the braking system to the scoop.

Docket No. 1 at 3-4, ¶ 10.  In support of these factual assertions, TK Mining attaches several orders issued by the MSHA to the Notice of Removal.  Order Number 7290040-01, dated October 15, 2011, states that the "Eimco 915 haulage equipment . . . will be moved to the shop and secured for further investigation."  Docket No. 1-5 at 1.  This Order was terminated on October 24, 2011.  Docket No. 1-5 at 2.  Order Number 7290046 is dated December 5, 2011 and describes testing and modification of the scooptram.  Docket No. 1-6 at 1-2.  It states that, "[d]uring the investigation . . . . [t]he scoop was removed from the mine and taken to the main shop area for further testing . . . . The brakes were adjusted to the manufactures [sic] guidelines."  Docket No. 1-6 at 1-2.

The complaint alleges that, "[f]ollowing receipt of [the November 23, 2011] preservation letter," TK Mining "caused parts to be replaced and/or repaired, including

6

mechanical and hydraulic parts, which are affixed" to the scooptram and modified its "braking systems." Docket No. 1-2 at 8, ¶¶ 71, 74-75. These allegations do not, as TK Mining claims, suggest that plaintiff is alleging that "any modification to [the] scoop following the incident violated the alleged duty to preserve evidence." See Docket No. 16 at 6. Rather, plaintiff clearly alleges that, "[f]ollowing receipt of [the November 23, 2011] preservation letter, TK permitted and in fact modified The Machine without first giving notice [] warning Plaintiff." Docket No. 1-2 at 8, ¶ 71. Moreover, the December 5, 2011 MSHA Order that TK Mining cites does not support the contention that plaintiffs are seeking to hold it liable for modifications ordered by the MSHA since the Order does not indicate that the MSHA required modifications after November 23, 2011 and it does not describe any modifications to the "mechanical and hydraulic parts" affixed to the scooptram. See Docket No. 1-6.

TK Mining does not dispute that the MSHA completed its testing and relinquished control of the scooptram on October 24, 2011. See Docket No. 1 at 3, ¶ 10. Moreover, plaintiff does not allege that the modifications made in October 2011 at the behest of the MSHA constitute spoliation of evidence. See Docket No. 1-2 at 8, 17, 19, ¶¶ 70-71, 186, 202. Plaintiff's claims against TK Mining concern only modifications that plaintiff alleges occurred after November 23, 2011. TK Mining does not state that it modified the scooptram under the MSHA's direction after November 23, 2011. Instead, the Notice of Removal implies, but does not state, that TK Mining did not modify the scooptram after the end of October 2011. Docket No. 1 at 3, ¶ 10. As plaintiff argues, this is not a colorable federal defense because it does not establish that TK Mining was acting under the direction of a federal officer when engaging in the challenged conduct

7

or that there is a causal connection between the activities carried out at the behest of the MSHA and the conduct underlying plaintiff's state court claims. *See Vandeventer*, 494 F. Supp. 2d at 1263. It is, instead, a defense on the merits of plaintiff's claims, not properly addressed in ascertaining the Court's subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.") (emphasis in original).[2]

### B. Fees and Costs

Mr. DeVaul requests an award of attorney's fees and costs expended on this remand on the basis that "this matter was improperly removed in order to delay timely litigation and harass Plaintiff." Docket No. 7 at 5-6. TK Mining counters that the request for fees and costs is unreasonable because it had a good faith basis for removing the case. Docket No. 16 at 7-8.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This matter "is left to the court's discretion, to be exercised based on the

---

[2]In its Motion Requesting Oral Argument and Evidentiary Hearing on Plaintiff's Motion to Remand [Docket No. 39], TK Mining argues that the allegation that it modified the scooptram after receiving Mr. DeVaul's spoliation letter is "factually unsupportable" and that "any modifications or adjustments to the Scoop's braking system were performed while the Scoop and TK defendants were under MSHA jurisdiction." Docket No. 39 at 3, ¶ 5-6. TK Mining mischaracterizes this factual dispute regarding the merits of the case as a "threshold factual issue which is relevant to federal jurisdiction." *Id*. at ¶ 7. Since the Court lacks subject matter jurisdiction to consider the merits of the case, *see Steel Co.*, 523 U.S. at 88-89, TK Mining has not established a basis for holding an evidentiary hearing.

8

nature of the removal and the nature of the remand." *Id*. (Commentary on 1988 Revision of Section 1447). This provision was intended to "'replace' the bond requirement now eliminated from removal procedure." *Id*. An award of fees is committed to the broad discretion of the district court. *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997). Although a showing of bad faith is not necessary to support an award, a court may consider whether a party "acted in good faith and had a fair basis for removing the case" in determining whether fees are warranted. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 324 (10th Cir. 1994).

The Court finds that TK Mining, in full awareness of the applicable law, mischaracterized plaintiff's allegations in order to hide behind unsupported claims asserted in its Notice of Removal. A straightforward reading of the complaint and attached MSHA documents reveals no objectively reasonable basis for removal. *See Bio-Tec Environmental, LLC v. Adams*, 792 F. Supp. 2d 1208, 1222 (D.N.M. 2011) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Accordingly, the Court will exercise its discretion to award plaintiff the fees and costs reasonably expended in preparing the motion to remand and in responding to the related motions filed by TK Mining.

### III. CONCLUSION

As the Court did not rely on the Declaration of Keith R. Scranton in Support of Plaintiff's Reply to Response in Opposition to Motion to Remand [Docket No. 31-1] in arriving at its holding, the Motion to Strike Declaration of Keith Scranton [Docket No. 36] is moot.

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion to Remand and Brief in Support [Docket No. 7] filed by plaintiff Jerry DeVaul is GRANTED.  Plaintiff is awarded the reasonable costs and attorney's fees incurred in preparing the motion to remand and in responding to defendants' motions denied herein.  Plaintiff shall file an affidavit in accordance with D.C.Colo.LCivR 54.3 **on or before Friday, January 31, 2014**.  It is further

**ORDERED** that the Motion to Strike Declaration of Keith Scranton [Docket No. 36] is DENIED as moot.  It is further

**ORDERED** that the Motion Requesting Oral Argument and Evidentiary Hearing on Plaintiff's Motion to Remand [Docket No. 39] is DENIED.  It is further

**ORDERED** that this case is remanded to the District Court for Las Animas County, Colorado, where it was filed as Case No. 2013CV30077.

DATED January 15, 2014.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge